UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2005 FEB 23 PM 4 14

CLERK
BY _____
DEPUTY CLERK

JOHN PICKETT,
JULIE PICKETT, AND
VERMONT MUTUAL INSURANCE
COMPANY
PLAINTIFFS

v.

ULTRAMAR ENERGY, INC.,
STAR GAS PARTNERS, L.P., AND
STAR GAS PROPANE, L.P.,
DEFENDANTS

Civil Action

Case No. 2:05CV46

## COMPLAINT

NOW COME the plaintiffs, John Pickett and Julie Pickett, by and through their attorneys, Darby Stearns Thorndike Kolter & Ware, LLP, and Vermont Mutual Insurance Company, by and through its attorneys, Legus and Bisson, PLC, and allege as follows:

### PARTIES

1.  Plaintiffs John Pickett and Julie Pickett are individuals residing in Stowe, Vermont.

2.  Vermont Mutual Insurance Company is an insurance corporation organized and registered in Vermont, with its principal place of business in Montpelier, Vermont, and at all times pertinent was the homeowners insurer for John and Julie Pickett.

3. Defendant Ultramar Energy, Inc. ("Ultramar")is a corporation registered under the laws of Delaware, with a principal place of business in San Antonio, Texas.

4. Defendant Star Gas Partners, L.P. is a limited partnership existing under the laws of Delaware, with a principal place of business in Stamford, Connecticut.

5. Defendant Star Gas Propane, L.P. is a limited partnership existing under the laws of Delaware, with a principal place of business in Stamford, Connecticut. On information and belief, Star Gas Propane is the operating subsidiary of Star Gas Partners. Defendants Star Gas Partners and Star Gas Propane are collectively referred to herein as Star Gas.

## JURISDICTION AND VENUE

6. This is an action brought pursuant to 28 U.S.C. §1332 between citizens of different states.

7. The amount in controversy exceeds $75,000.

8. Venue is proper in this district as jurisdiction is founded on diversity of citizenship, and a substantial part of the events and omissions giving rise to the claim occurred within the State of Vermont.

## BACKGROUND

9. On October 25, 2003, plaintiff John Pickett was in Morrisville, Vermont at the construction site of John and Julie Pickett's future residence. This structure was under construction at the time.

- 3 -

10. While at the site, plaintiff John Pickett was critically burned in an explosion and fire.

11. The explosion occurred when LP-gas supplying a hot water boiler infiltrated into the basement of the structure and ignited.

12. On information and belief, the LP-gas was supplied to the Pickett house by defendants, Ultramar and Star Gas.

13. The underground storage tank in which said LP-gas was stored was provided to the Pickett house by defendants, Ultramar and Star Gas.

14. The LP-gas at the Pickett house did not contain sufficient odorant to enable individuals, including plaintiff John Pickett, to detect the presence of LP-gas. Plaintiff John Pickett was accordingly unable to detect that a dangerous quantity of LP-gas had infiltrated into the basement area.

15. The defendants Ultramar and Star Gas failed to provide adequate warnings to consumers and other users of LP-gas that they would be unable to detect LP-gas if the odorant faded or was otherwise rendered ineffective.

16. The defendants Ultramar and Star Gas failed to provide adequate warnings to consumers and other users of LP-gas that under various conditions the odorant in LP-gas would lose its effectiveness through the shipping and storage process.

17. Defendants Ultramar and Star Gas failed and refused to take adequate and effective steps to ensure that the propane gas arrived in the Pickett home with adequate odorant.

18. As a direct and proximate result of the explosion and fire, plaintiff John Pickett was severely burned over 65 percent of his body, and has sustained permanent and disabling injuries, disfigurement, loss of function and substantial pain and suffering.

19. As a direct and proximate result of his injuries, plaintiff John Pickett has lost income, has incurred medical expenses, and will in the future lose income and incur additional medical expenses.

20. As a direct and proximate result of the explosion and fire, plaintiffs sustained damage to their home, and loss of personal property. A portion of the losses to the home and personalty were compensated by Vermont Mutual Insurance Company, whose subrogated right to recovery is made a part of this claim.

## COUNT I – NEGLIGENCE FOR LP-GAS

21. Plaintiffs incorporate as if fully set forth herein paragraphs 1 through 20 of this complaint.

22. Defendants owed a duty to purchasers or users of the LP-gas, including plaintiffs John and Julie Pickett, to provide the LP-gas in a safe condition.

23. Defendants negligently failed to ensure that the LP-gas sold to Mr. and Mrs. Pickett was properly odorized.

24. Defendants negligently failed to ensure that any odorant which had been added to the LP-gas sold and delivered to the Picketts' home remained viable and effective as of October 25, 2003.

25. Defendants failed to provide adequate warnings as to potential loss of effectiveness of odorant.

26. As a direct and proximate result of said negligence, plaintiff John Pickett was injured on October 25, 2003, and the Picketts' home and personal property was destroyed

## COUNT II – STRICT LIABILITY FOR LP-GAS

27. Plaintiffs incorporate as if fully set forth herein paragraphs 1 through 26 of this complaint.

28. The LP-gas sold by defendants to Mr. and Mrs. Pickett was in a defective condition and unreasonably dangerous to purchasers or users, due to the lack of odorant.

29. The defendants are engaged in the business of selling LP-gas.

30. The LP-gas reached the Picketts' home without substantial change in the condition in which it was sold.

31. As a direct and proximate result of the defective and unreasonably dangerous LP-gas, plaintiff John Pickett was injured on October 25, 2003, and the Picketts' home and personal property was destroyed.

32. Defendants are accordingly strictly liable for plaintiffs' damages.

## COUNT III – BREACH OF WARRANTY FOR LP-GAS

33. Plaintiffs incorporate as if fully set forth herein paragraphs 1 through 32 of this complaint.

34. As sellers, manufacturers and/or distributors of the LP-gas sold to the plaintiffs, Mr. and Mrs. Pickett, defendants have made implied and/or express warranties that the LP-gas was reasonably fit for the general uses and purposes for which it was sold, and that it was free of any defects that would create an unreasonable risk of injury to purchasers or foreseeable users of the LP-gas.

35. Defendants breached these implied and/or express warranties as the LP-gas was defective and unreasonably dangerous.

36. As a direct and proximate result of the defective and unreasonably dangerous LP-gas, plaintiff John Pickett was injured on October 25, 2003, and the Picketts' home and personal property was destroyed.

## COUNT IV – NEGLIGENCE FOR DEFECTIVE TANK

37. Plaintiffs incorporate as if fully set forth herein paragraphs 1 through 36 of this complaint.

38. As of July 1, 2003, defendant Star Gas Partners, LP, purchased the assets of defendant Ultramar, Inc., including, on information and belief, the underground storage tank located on the Picketts' property.

39. On information and belief, said underground storage tank contained red rust within it before, on and after July 1, 2003.

40. Exposure to red rust causes the ethyl mercaptan, the type of odorant contained in the underground storage tank at the Picketts' home, to fade or be reduced in quantity or odorizing effect.

41. Defendants owed a duty to purchasers or users of the underground storage tank, including plaintiffs, Mr. and Mrs. Pickett, to provide a safe underground storage tank.

42. Defendants negligently failed to ensure the underground storage tank at the Picketts' home was free of red rust.

43.     Defendants negligently failed to provide adequate warnings that said underground storage tank contained red rust, and that this condition would cause the odorant in the tank to fade, or be reduced in quantity or odorizing effect.

44.     As a direct and proximate result of said negligence, plaintiff John Pickett was injured on October 25, 2003, and the Picketts' home and personal property was destroyed.

### COUNT V – STRICT LIABILITY FOR DEFECTIVE TANK

45.     Plaintiffs incorporate as if fully set forth herein paragraphs 1 through 44 of this complaint.

46.     Defendants are in the business of providing underground storage tanks for LP-gas to their customers.

47.     Said storage tank delivered by defendants to the Picketts' home was in a defective condition and unreasonably dangerous to the user, in that it contained rust.

48.     As a direct and proximate result of the defective and unreasonably dangerous storage tank, plaintiff John Pickett was injured on October 25, 2003, and the Picketts' home and personal property was destroyed.

49.     Defendants are strictly liable for damages for the defective condition of the underground storage tank.

### COUNT VI – BREACH OF WARRANTY FOR DEFECTIVE TANK

50.     Plaintiffs incorporate as if fully set forth herein paragraphs 1 through 49 of this complaint.

51.     As sellers, manufacturers or distributors of the underground storage tank sold to the Picketts, defendants have made implied and/or express warranties that said tank was

reasonably fit for the general uses and purposes for which it was sold, and that it was free of any defects that would create an unreasonable risk of injury to foreseeable users of said tank.

52. Defendants breached these implied and/or express warranties as the underground storage tank was defective and unreasonably dangerous.

53. As a direct and proximate result of the defective and unreasonably dangerous LP-gas, plaintiff John Pickett was injured on October 25, 2003, and the Picketts' home and personal property was destroyed.

### COUNT VII – LOSS OF CONSORTIUM

54. Plaintiffs incorporate as if fully set forth herein paragraphs 1 through 53 of this complaint.

55. As a consequence of the injuries suffered by her husband, plaintiff Julie Pickett has suffered a loss of consortium.

WHEREFORE, plaintiffs demand judgment against the defendants for:

A. Compensatory damages in excess of $75,000, this court's jurisdictional minimum, including damages for personal injury and property loss;

B. Lost Wages (past and future);

C. Medical Costs (past and future);

D. Costs;

E. Reasonable attorneys' fees;

F. Such further relief as the Court deems just.

PLAINTIFFS DEMAND TRIAL BY JURY.

DATED at Stowe, Vermont this 22nd day of February, 2005.

DARBY STEARNS THORNDIKE KOLTER AND WARE, LLP, ATTORNEYS FOR PLAINTIFFS JOHN AND JULIE PICKETT

_____
Mark H. Kolter, Esq.
Carlson Building
25 Main Street
P.O. Box 1392
Stowe, Vermont 05672-1392

DATED at Montpelier, Vermont this 21st day of February, 2005.

LEGUS AND BISSON, PLC, ATTORNEYS FOR PLAINTIFF VERMONT MUTUAL INSURANCE COMPANY

_____
Leo A. Bisson, Jr., Esq.
107 State Street
P.O. Box 339
Montpelier, Vermont 05601-0339